**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **CLAUDIA I. TRUJILLO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 12-2380-JAR-DJW** |
| | ) | |
| **CITY OF NEWTON, KANSAS, et.al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Claudia Trujillo filed this suit against Defendants Bryan Hall, Deanna Mowery, and the City of Newton ("the Newton Defendants"); and against Janell Buford and the Harvey County Board of County Commissioners, relating to her arrest and subsequent strip search at the Harvey County Adult Detention Center. Plaintiff filed an Amended Complaint without obtaining prior leave of Court on August 31, 2012, that adds Sheriff T. Walton as a defendant, a claim against Defendant Buford, and factual matter to the existing claims.

Before the Court are Defendants Buford, Walton, and the Harvey County Board of County Commissioners' ("the Harvey County Defendants") Motion to Dismiss (Doc. 9) the original Complaint, and Motion to Dismiss Amended Complaint (Doc. 22). As described more fully below, the Court finds that the Amended Complaint (Doc. 14), was improvidently filed without leave of Court and instead construes it as a motion for leave to amend. The Court grants the Harvey County Defendants' motion to dismiss the original Complaint, and denies the motion to amend because the proposed amendments are futile.

## I.     Procedure for Amending the Complaint

Plaintiff filed her original Complaint in this matter on June 18, 2012. On August 3, 2012,

the Newton Defendants filed their Answer, and on August 10, 2012, the Harvey County Defendants filed their original motion to dismiss under Fed. R. Civ. P. 12(b). Plaintiff filed an Amended Complaint on August 31, 2012—28 days after the Newton Defendants' Answer, and 21 days after the Harvey County Defendants' motion to dismiss. The Amended Complaint added Walton as a party, a new claim against Buford, and factual matter to the claims already asserted in the original Complaint. Because Rule 15(a)(1) only allows amendment as a matter of course within 21 days "after service of a responsive pleading or 21 days after service of a motion under Rule 12(b) . . . , whichever is earlier," the Harvey County Defendants argue that Plaintiff's Amended Complaint could not be filed as a matter of course—the 21-day clock began to run on August 3 and did not start over on August 10. Since the Amended Complaint was filed without leave of Court, these Defendants ask that the Court grant their original motion to dismiss, and construe the Amended Complaint as a motion for leave to amend and deny it as futile. Plaintiff argues that her clock began to run on August 10, when the motion to dismiss was filed, since the amendments only relate to the Harvey County Defendants.

The Court agrees with Defendants, that the plain language of the rule, as well as the advisory committee notes regarding the 2009 rule amendments, dictate that Plaintiff's 21-day clock to amend as a matter of course began to run on August 3, when the Newton Defendants filed their responsive pleading. Because that clock expired on August 24, Plaintiff could not file her Amended Complaint on August 31 without first obtaining leave of court. The advisory committee notes make clear that the "whichever is earlier" language in Rule 15(a)(1) is not intended to be cumulative. "If a responsive pleading is served after one of the designated

motions is served, for example, there is no new 21-day period."[1] Here, a designated motion was served after a responsive pleading, but the same rule applies. Plaintiff was required to seek leave before filing her Amended Complaint. The cases cited by Plaintiff are inapplicable, as they predate the 2009 amendments to Rule 15.

The Court therefore construes the Amended Complaint (Doc.14), as a motion for leave to amend. Under Rule 15(a)(2), leave to amend a complaint is freely given when justice so requires.[2] A party is typically granted leave to amend under this rule unless there is "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendment previously allowed, or futility of amendment."[3] A proposed amendment is futile if the amended complaint would be subject to dismissal.[4] The Court will consider the factual allegations in the proposed Amended Complaint under the dismissal standards in conjunction with its analysis of whether the original Complaint fails to state a claim upon which relief can be granted.

## II.    Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[5] Under this

---

[1]Fed. R. Civ. P. 15 advisory committee's note (providing an example of how the 21-day deadline in Rule 15(a)(1)(B) is not cumulative).

[2]Fed. R. Civ. P. 15(a)(2).

[3]*Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005).

[4]*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008).

[5]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[6]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[7] but requires more than "a sheer possibility."[8]

The plausibility standard enunciated in *Bell Atlantic v. Twombly*,[9] seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"[10] *Twombly* does not change other principles, such as that a court must accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[11]  The Court is cognizant that in the context of § 1983 claims against individual government actors, "[t]he *Twombly* standard may have a greater bite . . . because they typically include complex claims against multiple defendants."[12]

The Supreme Court has explained the analysis as a two-step process.  For purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[13]  Thus,

---

[6]*Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[7]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8]*Id.*

[9]*Twombly*, 550 U.S. 544 (2007).

[10]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[11]*Id.* (citing *Twombly*, 550 U.S. at 556).

[12]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2010) (quotation omitted).

[13]*Iqbal*, 556 U.S. at 678.

the Court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[14]  Second, the Court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[15]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16]

### III.    Factual Allegations

The following facts are alleged in the Complaint and proposed Amended Complaint and are construed in the light most favorable to Plaintiff.  On October 29, 2011, Lizeth Trujillo-Garcia gave Plaintiff Claudia Trujillo a ride to Hutchinson, Kansas, to visit a friend, Rosie Gomez.  At about 8:43 a.m., Garcia's car was subjected to a traffic stop near US-50 and South Anderson, near Newton, Kansas, by Newton Police Officers Bryan Hall and Deanna Mowery. Garcia was almost immediately arrested for driving with a suspended driver's license, and Plaintiff told officers that she did not have a driver's license or other form of identification—she also informed officers that she was seventeen years old.

Hall told Plaintiff that he would take her to a truck stop in town, where she could arrange for a ride home, and Plaintiff removed her purse from the vehicle.  Hall told Plaintiff that he must search her purse before she could bring it into his vehicle, and took it, instructing Plaintiff to walk to the back of the stopped vehicle.  Mowery searched the purse without Plaintiff's

---

[14]*Id.* at 679.

[15]*Id.*

[16]*Id.* at 678.

consent, but found no contraband.  At about 9:05 a.m., Plaintiff retrieved her cell phone from the purse and attempted to arrange a ride home.

Soon after Plaintiff retrieved her purse, Hall performed an inventory search of Garcia's vehicle, during which he directed Officer Mowery to arrest Plaintiff by hand signal.  Hall contacted the City's dispatch officer to "start juvenile intake."  Hall had found two bags of alleged marijuana, one bag of crushed diet pills, and one bag of tobacco in Garcia's purse, which was left in the car after her arrest.  The officers confirmed with Garcia that the purse was hers, but Hall told Garcia that he was charging both women with "intent to distribute."  Garcia told Hall that the purse was not Plaintiff's, it belonged to Garcia.

Nonetheless, Hall Mirandized Plaintiff and repeatedly asked her whether she knew about the drugs found in the car, to which Plaintiff repeatedly responded, "no."  Hall continued to search Garcia's vehicle, and the officers proceeded to discuss amongst themselves the decision to arrest Plaintiff; Mowery had some reservation about whether Plaintiff should be charged.  Hall insisted that Plaintiff should be arrested and strip searched, and instructed Mowery to run a background search through dispatch.  Dispatch discovered no outstanding warrants or prior drug convictions for Plaintiff.  Hall told Mowery to charge Plaintiff with possession with intent to distribute and to tell "Tony," "strip searches on both."

Mowery and Plaintiff arrived at the Harvey County Detention Center, where Deputy Janell Buford is a female jailer.  Mowery and Buford accompanied Plaintiff to a "change out room" that is adjacent to temporary holding cells; it is not located in the general detention area of the jail.  Mowery and Buford supervised Plaintiff, instructed her to remove her clothing, and visually inspected her naked body, and body cavities.  They found no contraband.  During all

relevant times, Mowery and Buford were aware that Plaintiff was seventeen years old.

Buford completed and signed a strip search authorization form, "Probable Cause/Reasonable Suspicion Assessment Form (For Authorization in Strip Searches of Traffic and Misdemeanor Arrestees)." Buford's shift supervisor signed the form as well. Buford checked the item on the form that probable cause was based on "the nature of the criminal charges pending against the arrestee."[17] None of the Defendants prepared booking paperwork for Plaintiff to be detained as an adult at the Harvey County Jail. The booking documents are specific to juvenile offenders.

Defendant Walton, in his capacity as the Harvey County Sheriff, instituted a policy that juvenile offenders may not be held at the Harvey County Jail. Also, Walton had previously been made aware of "problems in booking inmates at the Detention Center," specifically, arresting officers dropping off detainees without providing the charges. Walton had a policy at the Harvey County Jail that inmates are to be strip searched prior to entering the general population if an initial frisk reveals a weapon or illegal contraband.

After the arrest and strip search, Hall told Plaintiff that he suspected she and Garcia were planning to smuggle contraband into the Hutchinson Correctional Facility ("HCF"). HCF requires visitors to produce a picture identification in order to be admitted into the facility.

Plaintiff was released after approximately three days of detention and no formal charges were ever filed against her.[18]

---

[17] Doc. 14, Ex. 1.

[18] The original Complaint alleges that the she was released after "three days of juvenile detenion," but the proposed Amended Complaint omits the word "juvenile" from the corresponding factual averment. Defendants suggest that Plaintiff had a "three-day stay in a juvenile detention facility." The facts, as alleged in the pleadings, do not make clear whether Plaintiff was processed at the adult facility and then transferred at some point to the juvenile

**IV.    Discussion**

Plaintiff alleges several claims for relief under 42 U.S.C. § 1983 in the Complaint and proposed Amended Complaint.  In Count I, she alleges a Fourth and Fourteenth Amendment claim against the Newton Defendants in their individual and official capacities.  Because the Harvey County Defendants are not named on this count, the Court finds that Defendants' motion to dismiss Count I is moot.

In Count II of both pleadings, Plaintiff alleges a Fourth and Fourteenth Amendment claim against Defendants Mowery and Buford in their individual and official capacities, claiming the strip search was illegal and unreasonable.  The proposed Amended Complaint does not specifically name Defendant Walton on this claim, however, Plaintiff argues in the briefs that he is subject to supervisory liability on Count II.

In Count III of both pleadings, Plaintiff alleges a claim for invasion of privacy under the Fifth, Ninth, and Fourteenth Amendments against Defendants Mowery and Buford in their individual and official capacities.

In Count IV of both pleadings, Plaintiff alleges a Fourteenth Amendment due process claim against all Defendants.

In Count V of the original Complaint, Plaintiff alleges a failure to train claim against the City of Newton and the Harvey County Board of County Commissioners; in Count VI of the proposed Amended Complaint, Plaintiff realleges this claim, naming Defendant Walton as an additional Defendant.

The proposed Amended Complaint adds a new claim, Count V, against Defendant

_____

facility, or instead was housed in the general population of the adult jail during her three-day detention.

Buford, for unreasonable search and seizure under the Fourth and Fourteenth Amendments. This claim is tied to her alleged failure to follow certain Kansas regulatory provisions in executing the strip search. Plaintiff stipulates that this Count should be excluded from the Amended Complaint;[19] therefore, the motion for leave to amend is moot as it relates to proposed Count V.

The Court therefore proceeds to consider the claims that remain against the Harvey County Defendants: Counts II, III, and IV of both pleadings, Count V of the original Complaint, and Count VI of the proposed Amended Complaint.

## A. Counts III and IV: Invasion of Privacy and Due Process

The Harvey County Defendants move to dismiss Counts III and IV for improperly challenging the strip search under constitutional provisions other than the Fourth Amendment. Plaintiff does not respond to this argument in either response.

When bringing a claim under 42 U.S.C. § 1983, "the first step . . . is to identify the specific constitutional right allegedly infringed."[20] Plaintiff alleges claims of due process under the Fifth and Fourteenth Amendments, and invasion of privacy under the Fifth, Ninth, and Fourteenth Amendments, based on the same conduct that forms the basis of her claim under the Fourth Amendment—the seizure and subsequent strip search. But the Fifth and Fourteenth Amendments prohibit deprivations of "life, liberty or property without due process of law." The Supreme Court has held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for

---

[19]Doc. 27 at 27–28.

[20]*Albright v. Oliver*, 510 U.S. 266, 271 (1994).

analyzing these claims.'"[21]  Because the Fourth Amendment explicitly addresses Plaintiff's invasion of privacy and due process claims regarding her arrest, detention, and strip search, that Amendment is the proper basis under which to consider her claims.[22]  Moreover, the Ninth Amendment is a rule of construction, not an independent source of constitutional rights, so it cannot form the basis of a civil rights claim under § 1983.  Therefore, Plaintiff fails to allege a constitutional claim of due process or invasion of privacy in Counts III and IV and those claims must be dismissed against the Harvey County Defendants.[23]  The proposed Amended Complaint does not cure this deficiency, so amending Counts III and IV would be futile.

### B.    Count II: Individual Capacity Claim of Illegal and Unreasonable Strip Search Against Defendant Buford

#### 1.    Personal Participation

"In order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established."[24]  When a claim is asserted against multiple defendants, the plaintiff must "'make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims

---

[21]*Id.* at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see also Turner v. Houseman*, 268 F. App'x 785, 787 (10th Cir. 2008).

[22]*See Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) ("the Fourth Amendment protects against '*unreasonable* searches and seizures' and pertains to the events leading up to and including an arrest of a citizen previously at liberty"); *Austin v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir. 1991) (holding that the Fourth Amendment applies up until formal charges are brought or an arraignment is held), *abrogated on other grounds*, *Johnson v. Jones*, 515 U.S. 304 (1995).

[23] *See Griswold v. Connecticut*, 381 U.S. 479, 492 (1965); *Onyiuke v. N.J. State Sup. Ct.*, 242 F. App'x 794, 794 (3d Cir. 2007); *Mays v. Wyandotte Cnty. Sheriff's Dep't*, No. 09-3127-SAC, 2009 WL 2485390, at *2 (D. Kan. Aug. 11, 2009).

[24]*Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006).

against him or her.'"[25]  The Tenth Circuit has held that, "[g]iven the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."[26]

Defendants argue that Plaintiff is unable to establish Buford's responsibility for the alleged unlawful strip search because she did not make the decision to strip search Plaintiff. Instead, Defendants urge that she merely participated in the visual search and completed the intake form after the search.  Defendants argue that merely failing to intervene cannot form the basis of liability under § 1983.  Plaintiff maintains that Buford's participation in the search itself is sufficient to establish personal participation under § 1983.

The Complaint and proposed Amended Complaint allege that Buford personally participated in the strip search in question—she accompanied Plaintiff to the change out room, directed Plaintiff's actions during the alleged unlawful search, and signed off on the form authorizing that search.  Buford did not merely rubber stamp the allegedly unconstitutional activity.   Under these circumstances, Buford personally participated in the act causing the alleged constitutional deprivation alleged in Count II, and the pleadings are sufficient to place Buford on notice of the unconstitutional acts for which she is alleged to be responsible.

### 2.    Qualified Immunity

---

[25]*Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008)).

[26]*Robbins*, 519 F.3d at 1250.

Section 1983 provides a cause of action for the deprivation of rights by any person acting under the color of a "statute, ordinance, regulation, custom, or usage, of any State or Territory."[27] Allowing a person to seek damages in an individual capacity suit against the offending parties is a vital component for vindicating cherished constitutional rights.[28]  In certain circumstances, however, the individual offending party is entitled to qualified immunity from damages liability under § 1983.[29]  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."[30]  To this end, qualified immunity shields government officials from liability for money damages unless the plaintiff shows (1) that the official violated a statutory or constitutional law, and (2) that the right the official violated was "clearly established" at the time of the challenged conduct.[31]  Qualified immunity is a defense that must be pleaded by the defendant, but once the defendant raises it, the burden of proof is on the plaintiff.[32]  Unless the plaintiff proves both prongs, the official is entitled to qualified immunity.[33]  Courts have discretion to decide which of the two prongs of the analysis to address first.[34]

Plaintiff's Fourth Amendment claim against Buford alleges that the strip search was

---

[27] 42 U.S.C. § 1983.

[28] *Gomez v. Toledo*, 446 U.S. 635, 639 (1980).

[29] *Id.*

[30] *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011).

[31] *Id.* at 2080.

[32] *Gomez*, 446 U.S. at 640.

[33] *See al-Kidd*, 131 S. Ct. at 2080.

[34] *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

illegal because she lacked reasonable suspicion that Plaintiff possessed a weapon, controlled substances, or other contraband. Plaintiff argues that it was clearly established law in the Tenth Circuit on October 29, 2011, that Defendants had no legal basis for strip searching because she was not to be placed in the general population at the Harvey County Jail, nor was there reasonable suspicion that she possessed concealed weapons, drugs, or other contraband. The Court determines that the Complaint and proposed Amended Complaint do not demonstrate a constitutional violation by Buford, and further finds that it was not clearly established that Buford could not strip search Plaintiff upon intake at the Harvey County Jail, given the charges upon which she was arrested. Accordingly, Buford is entitled to qualified immunity.

Under the Fourth Amendment, the Court is to balance "the need for the particular search against the invasion of personal rights that the search entails."[35] "There can be no doubt that a strip search is an invasion of personal rights of the first magnitude."[36] The parties spend considerable time in the briefs discussing the Supreme Court's recent decision in *Florence v. Board of Chosen Freeholders of County of Burlington*,[37] which holds that jail administrators may require all arrestees who will enter the general population to undergo visual strip searches that do not entail physical contact with the corrections officers.[38] The Court finds this case of little assistance first, because the facts alleged in this case do not establish that Plaintiff was to enter the general population of either the adult or juvenile detention facilities, and second, because it

---

[35]*Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

[36]*Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir. 1993).

[37]132 S. Ct. 1510 (2012).

[38]*Id.* at 1514, 1522–23.

was decided after October 29, 2011.[39]

In *Archuleta v. Wagner*,[40] the Tenth Circuit set forth the principles by which a strip search will be reasonable for purposes of the Fourth Amendment. There are two primary concerns involved in this inquiry: "whether a detainee is to be placed in the general prison population and whether there is reasonable suspicion that the detainee has concealed weapons, drugs, or contraband."[41] The Complaint and proposed Amended Complaint, read in the light most favorable to Plaintiff, do not allege that Plaintiff was to be placed in the general population at the Harvey County Jail. Further, these pleadings do not indicate that Plaintiff was strip searched at the adult jail as part of a booking process into the general population of the juvenile detention facility. The Court also assumes as true Plaintiff's factual averment that the Harvey County Jail policy was not to book juvenile offenders into its general population. Given these allegations, the Court cannot find that Plaintiff was strip searched in conjunction with her detention in the general population of either detention center. So in order for the strip search of Plaintiff to be constitutional, the alleged facts must show that Buford had a reasonable suspicion that Plaintiff was concealing weapons, drugs, or contraband.

Reasonable suspicion to search Plaintiff's body must have a "minimum level of objective justification."[42] And the inquiry here is different than the inquiry for the Newton Defendants because Buford "was in no position to investigate whether [Plaintiff] was guilty or innocent once

---

[39]*See, e.g.*, *al-Kidd*, 131 S. Ct. at 2085.

[40]523 F.3d 1278, 1284 (10th Cir. 2008).

[41]*Id.*

[42]*Id.*

she was brought to the . . . Detention Facility under arrest."[43]  Defendants maintain that the charges for which Plaintiff was arrested allowed Buford to reasonably assume that drugs may be hidden in her body cavity[ies], especially given the way in which the drugs found in Garcia's car were packaged.  But there are no facts alleged in the Complaint or proposed Amended Complaint that Buford had any knowledge of the way the drugs were packaged.  Likewise, there are no facts alleged that Buford knew of Hall's suspicion that Plaintiff and Garcia were intending to smuggle the drugs into the Hutchinson Correctional Facility.  In fact, according to the Complaint and proposed Amended Complaint, the only information known to Buford at the time of the search, was the charge for which Plaintiff was arrested, and Plaintiff's age.[44]

While the Tenth Circuit has rejected the contention that it is reasonable to strip search every arrestee "booked on a drug related charge,"[45] it has said that the crime a person is charged with "can provide some cause for suspicion, but it must be one 'commonly associated by its very nature with the possession of weapons or contraband' to help provide reasonable suspicion for a strip search.'"[46] The Court easily concludes that a possession with intent to distribute illegal drugs charge is, by definition, the type of crime associated with the possession of drugs.  And in this case, Plaintiff alleges that "the charge was the only information known to the officer."[47]

---

[43]*Id.* at 1285.

[44]Both sides address whether the Newton Defendants had probable cause to arrest Plaintiff, which predicated the strip search at the jail.  But this issue is not properly before the Court on the Harvey County Defendants' motion and is instead before the Court on a recently-filed motion for judgment on the pleadings by the Newton Defendants, which is not yet ripe.  The Court need not rule on this issue in order to find Defendant Buford enjoys qualified immunity.

[45]*See Foote v. Spiegel*, 118 F.3d 1416, 1425 (10th Cir. 1997) (citing *Cottrell v. Kaysville City, Utah*, 944 F.2d 730, 734 (10th Cir. 1993)).

[46]*Archuleta*, 523 F.3d at 1285 (quoting *Hill v. Bogans*, 735 F.2d 391, 394 (10th Cir. 1984)).

[47]*See id.* at 1286 n.5.

Therefore, the charges in this case could provide Buford the reasonable suspicion necessary to justify the strip search upon her arrest and detention, however temporary, at the Harvey County Jail.

Plaintiff suggests that her status as a juvenile changes the analysis; Defendants urge that it does not. Plaintiff repeatedly argues that she should not have been taken to the adult detention center and that even if she was just booked there en route to the juvenile detention center, it was against Kansas regulations to conduct the strip search there. But the Court reminds Plaintiff that Count V of the proposed Amended Complaint, premised on Defendants' failure to follow certain state regulations, has been excluded and her sole claim as against Buford with regard to the strip search is Count II. Within this framework, Plaintiff's reliance on her juvenile status only implicates the legality of the strip search if it was conducted pursuant to admission into the general population of one of the detention facilities. The Court does not reach this issue, and instead finds that Buford was entitled to reasonably suspect Plaintiff was hiding drugs or contraband given the charges against her for possession with intent to distribute. On this basis, regardless of whether Plaintiff was to be admitted into the general population of either facility, Buford was legally justified in strip searching Plaintiff.

The Court also finds that even if there was a constitutional violation, Plaintiff has failed to establish that the law was clearly established. To demonstrate that a right is clearly established, Plaintiff can rely on "cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits."[48] But the Court is cognizant that it "cannot find qualified

---

[48]*Id.* at 1283.

immunity wherever we have a new fact pattern."[49]  The Tenth Circuit has "'shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional.'"[50]  In sum, the qualified immunity analysis requires that the Court determine whether a reasonable officer would have known that the conduct at issue was unconstitutional.

As already discussed, the law at the time of Plaintiff's arrest and detention was clear that a corrections officer was justified in strip searching an arrestee if there was reasonable suspicion that the arrestee possessed drugs.  The law was also clearly established that the crime for which Plaintiff was arrested could provide such reasonable suspicion.  Moreover, Plaintiff can point to no controlling decision that a strip search of a juvenile upon booking at an adult jail, that is based on reasonable suspicion of drug possession, is unlawful.[51]  For all of these reasons, Buford enjoys qualified immunity on the individual capacity claim alleged against her in Count II.

## B.    Proposed Count II: Individual Capacity Claim of Illegal and Unreasonable Strip Search Against Defendant Walton

---

[49]*Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).

[50]*Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)).

[51]*Cf. Smook v. Minnehahah Cnty.*, 457 F.3d 806, 813–14 (8th Cir. 2006) ("no governing appellate decision had decided how to strike the "reasonableness" balance in the situation of juvenile detainees, and as late as 2004, the Second Circuit concluded not only that the asserted right of juvenile detainees to be free from strip searches was not clearly established, but that the right did not even exist."); *N.G. v. Connecticut*, 382 F.3d 225, 233 (2d Cir. 2004) (discussing the lack of appellate authority on the reasonableness of strip searches of juveniles in state custody, absent individualized suspicion of possession of drugs or contraband); Reynolds v. City of Anchorage, 379 F.3d 358, 367 (6th Cir. 2004) (finding officer had qualified immunity for visual strip search of juvenile where officer had reasonable suspicion that the plaintiff possessed narcotics); *Justice v. City of Peachtree City*, 951 F.2d 188, 193 (11th Cir. 1992) ("we hold that law enforcement officers may conduct a strip search of a juvenile in custody, even for a minor offense, based upon reasonable suspicion to believe that the juvenile is concealing weapons or contraband.").

Defendants next argue that Plaintiff fails to allege facts in the proposed Amended Complaint that would give rise to either direct or supervisory liability for Walton on Count II. The proposed Amended Complaint is devoid of facts that would support a direct liability claim against Walton—he was not present or even alleged to have been in the building at the time of the strip search. And liability cannot be imposed vicariously via the doctrine of *respondeat superior*.[52] When asserting a claim against a supervisor, a plaintiff must demonstrate "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."[53] "There must be an 'affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.'"[54]

Defendants argue that the facts, as alleged in the proposed Amended Complaint, do not suffice to demonstrate supervisory liability by Walton. The Court agrees. There are no facts that allege Walton created or had responsibility for a policy that gave rise to an alleged constitutional violation. To the contrary, the proposed Amended Complaint alleges that he instituted a policy that juveniles were not to be detained at the Harvey County Jail, and a policy for strip searching detainees under certain specified circumstances that were allegedly not met here. There is no allegation that these policies caused the allegedly unlawful strip search to occur.[55] And, the

---

[52]*Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006).

[53]*Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

[54]*Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (quoting *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)).

[55]The Court addresses the failure to train claim in conjunction with the official capacity claims against the City and County.

Court has determined that the Complaint fails to allege sufficient facts to establish that Buford caused a constitutional deprivation when she strip searched Plaintiff.

Plaintiff suggests that Walton is liable because his subordinate, Buford's shift supervisor, signed the strip search authorization form. But this is too tenuous of a connection—the shift supervisor's signature on that form does not constitute an affirmative link between Walton and any constitutional violation. The Court finds that his participation is akin to a jail warden's denial of a grievance, which the Tenth Circuit has found to be an insufficient affirmative link.[56] Walton's alleged actions in this case actually constitute far less participation than rubber stamping a grievance form because Walton did not sign the intake form at issue, an intermediate supervisor did. Therefore, to the extent Plaintiff alleges an individual capacity claim against Walton in Plaintiff's proposed Amended Complaint, it would be subject to dismissal, and the proposed amendment is therefore futile.

### C. Counts II and V, and Proposed Count VI: Official Capacity Claims against Defendant Harvey County Board of County Commissioners

Plaintiff alleges official capacity claims in Counts II and V, which includes an allegation of failure to train. As the Supreme Court has held, an official-capacity claim is merely another way of pleading an action against the entity for which the individual defendant is an agent, in this case, Harvey County.[57] The Harvey County Defendants move to dismiss these claims based on Eleventh Amendment immunity, and because there is no underlying constitutional violation.

### 1. Eleventh Amendment

The Supreme Court has repeatedly explained that the Constitution does not contemplate

---

[56]*Gallagher*, 587 F.3d at 1069.

[57]*Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

federal jurisdiction over suits against unconsenting states.[58]  Under the Eleventh Amendment,

states are immune from suit in federal court, even by its own citizens, "unless (1) the state

consents to the suit, or (2) Congress validly abrogates the states' immunity."[59]  In this case,

Plaintiff did not name the State as a defendant, yet the Harvey County Defendants urge that the

official capacity claims are barred by the Eleventh Amendment because Walton, as the Sheriff,

and Buford, as a jailor, should be considered officers of the State of Kansas, rather than the

County.

The Court follows the reasoning set forth in *Reyes v. Board of County Commissioners of

Sedgwick County, Kan.*, and finds that Walton and Buford are officers of Harvey County, so the

official capacity claims against them are the equivalent of an action against the Harvey County

Board of County Commissioners.[60]  Accordingly, the County is not entitled to Eleventh

Amendment immunity.[61]


### 2.    Municipal Liability

The County may not be held liable under § 1983 simply because it employs a person who

---

[58]*Hans v. Louisiana*, 134 U.S. 1, 10 (1890); *Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007).

[59]*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996); *Nelson v. Geringer*, 295 F.3d 1082, 1096 (10th Cir. 2002).

[60]No. 07-CV-2193-KHV, 2008 WL 2704160, at *7 (D. Kan. July 3, 2008) (determining that *Hunter v. Young*, 238 F. App'x 336, 338 (10th Cir. 2007) was not binding because it contained no analysis of this issue; and applying the four-factor test from *Steadfast Ins. Co. v. Agric. Co.*, 507 F.3d 1250, 1252–53 (10th Cir. 2007) in finding that "for purposes of setting policy for identifying and detaining prisoners on warrants from Sedgwick County, the sheriff acts as an arm of the county, and not the State.").

[61]*See  Steadfast Ins. Co.*, 507 F.3d at 1253 (discussing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280 (1977)).

is liable under § 1983.[62]  Instead, to hold a county liable under § 1983 for acts of its employees, a plaintiff must establish that the municipality has a policy or custom that directly caused the constitutional deprivation of rights.[63]  "[M]unicipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."[64]

As discussed on the individual capacity claims, the Court finds that Plaintiff's allegations do not state a plausible claim for relief against the individual Harvey County Defendants for violating Plaintiff's Fourth Amendment rights as alleged in Count II.  The Court found that these Defendants caused no constitutional deprivation, which is also fatal to the official capacity claims set forth in Count II.[65]

In Count V of the original Complaint and Count VI of the proposed Amended Complaint, Plaintiff asserts an official capacity claim based on the failure to train.  Again, the Court's finding of no constitutional deprivation forecloses this failure to train claim.  The Supreme Court has explained:

> [I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under

---

[62]*Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (10th Cir. 1978).

[63]*City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993).

[64]*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010).

[65]*See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782–83 (10th Cir. 1993).

§ 1983.[66]

The pleadings do not contain sufficient allegations of a jail policy of inadequate training on strip searches that amounts to a deliberate indifference to detainees' Fourth Amendment rights. Plaintiff does not identify a deficiency in the County's training program; instead, she alleges that the alleged constitutional violation is indicative of a failure to train according to the excerpted policies attached to the proposed Amended Complaint. The Court has found that even if Buford's actions were contrary to certain jail policies regarding strip searches, her actions did not cause a Fourth Amendment deprivation, therefore, Plaintiff cannot allege an official capacity claim for failure to train.

## V. Conclusion

The Court grants the Harvey County Defendants' motion to dismiss and motion to deny leave to amend. Plaintiff has failed to meet her burden to demonstrate that qualified immunity should not be applied to the individual capacity claims against Buford and Walton. The Court determines that the factual allegations in Count II of the Complaint are insufficient, when viewed in the light most favorable to Plaintiff, to demonstrate that Plaintiff's Fourth Amendment rights were violated by Buford. Counts III and IV must be dismissed because they improperly challenge the strip search under constitutional provisions other than the Fourth Amendment. And the official capacity claim in Count V is dismissed because there is no underlying constitutional violation for which to premise municipal liability against the County. These claims against the Harvey County Defendants in the original Complaint are dismissed.

The Court has determined that Plaintiff improperly filed her Amended Complaint without

---

[66] *City of Canton*, 489 U.S. at 388.

prior leave of Court. So the Court has construed Doc. 14, Plaintiff's Amended Complaint, as a motion for leave to amend. Because the Court finds that the proposed amendments would be subject to dismissal, the Court denies leave to amend as futile. Accordingly, the Court strikes the Amended Complaint. Because the Amended Complaint was not properly filed, and leave to amend is denied, the service issue identified in the Court's January 31, 2013 Order to Show Cause is now moot.

**IT IS THEREFORE ORDERED BY THE COURT** that the Harvey County Defendants' Motion to Dismiss (Doc. 9) the original Complaint is **granted**.

**IT IS FURTHER ORDERED** that the Harvey County Defendants' Motion to Dismiss Amended Complaint (Doc. 22) is **moot**. The Amended Complaint (Doc. 14) is hereby **stricken**.

Dated: February 12, 2013

S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE