IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CLAUDIA I. TRUJILLO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-2380-JAR |
| | ) | |
| CITY OF NEWTON, KANSAS, et. al | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 1983 for an alleged deprivation of constitutional rights surrounding the arrest and strip search of Plaintiff Claudia Trujillo. Defendants City of Newton, Deanna Mowery, and Bryan Hall move for judgment on the pleadings (Doc. 32), pursuant to Fed. R. Civ. P. 12(c). The Court grants Defendants Mowery and Hall qualified immunity on Plaintiff's Fourth Amendment claims as well as other claims that are subsumed by the Fourth Amendment claim. Moreover, Plaintiff's Complaint fails to state a plausible claim for *Monell* liability against Defendant City of Newton, for the same reasons it failed to state such a claim against Defendant Board of Commissioners of Harvey County, as this Court ruled in its previous orders.[1] Thus, Defendants' motion for judgment on the pleadings is granted.

**I. Legal Standard**

The standard for a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same as that applied to a motion to dismiss for failure to state a claim under Fed. R. Civ. P.

---

[1]Memorandum Opinion and Order, Doc. 39, February 12, 2013; Memorandum Opinion and Order, Doc. 45, March 22, 2013.

1

12(b) (6).[2]  The court must accept all facts pleaded by the non-moving party as true and grant all reasonable inference from the pleadings in favor of the non-moving party.[3]  A motion for judgment on the pleadings should not be granted unless the movant has clearly established that there are no material facts to be resolved and that the movant is entitled to judgment as a matter of law.[4]  The court does not accept as true legal conclusions that are couched as factual allegations,[5] but rather determines whether the factual allegations "plausibly give rise to an entitlement to relief."[6]  To avoid dismissal, a plaintiff must state a plausible claim, which requires "sufficient factual allegations to 'raise a right to relief above the speculative level.'"[7]

**II. The Original Complaint is the Operative Pleading**

Plaintiff filed her original Complaint on June 18, 2012.  Defendants Hall, Mowery and City of Newton answered.  Defendants Janell Buford, T. Walton and Board of Commissioners of Harvey County filed a motion to dismiss.  Thereafter, Plaintiff improvidently filed an Amended Complaint, without first seeking leave to file.   This prompted Defendants Buford, Walton and Board of Commissioners to file a motion to dismiss the Amended Complaint; while defendants Hall, Mowery and City of Newton filed their answer to the Amended Complaint.  In a

---

[2]*Colony Ins. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).

[3]*Id.*

[4]*Id*

[5]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[6]*Id.* at 679.

[7]*Id.*

2

Memorandum Opinion and Order entered on February 12, 2013,[8] this Court construed the Amended Complaint as Plaintiff's motion to amend, but having considered the substance of the Amended Complaint, the Court found that the amendment would be futile and thus denied the Amended Complaint as improvidently filed. The Court reiterated this ruling in its Memorandum Opinion and Order entered on March 22, 2013,[9] denying Plaintiff's Motion to Reconsider. Thus, the operative pleading, for purposes of Defendants' motion for judgment on the pleadings, is the original Complaint. The Court notes, however, that having reviewed the Amended Complaint again, it is still clear that the amendment would be futile. For even if the operative pleading was the Amended Complaint, the Court would nonetheless grant the Defendants' motion for judgment on the pleadings.

## III. Factual Allegations

The Court previously set out the factual allegations of the Complaint, in its Memorandum Opinion and Order granting Defendants Buford, Walton and Board of Commissioners' motion to dismiss for failure to state a claim. The Court fully incorporates those same factual allegations and merely summarizes them in this order.

Plaintiff Claudia Trujillo was a passenger in a car driven by Lizeth Trujillo-Garcia ("Garcia"). The only other occupant of the car was a baby, riding in the back seat. Garcia and Plaintiff were on their way to Hutchinson, Kansas, when Defendants Bryan Hall and Deanna Mowery, who are Newton police officers, effected a traffic stop of Garcia's car. They arrested Garcia almost immediately for driving with a suspended driver's license. Plaintiff told Hall and

---

[8]Doc. 39.

[9]Doc. 45.

Mowery that she was 17 years old and did not have a driver's license or other form of identification. Hall told Plaintiff he would take her to a truck stop, where she could make arrangements for a ride. Mowery told Plaintiff to wait outside of the car, and Mowery searched Plaintiff's purse without Plaintiff's consent and found no contraband. Plaintiff identified this purse as her possession, and in fact, took her cell phone out of this purse in order to call someone for a ride. Meanwhile, Hall performed an inventory search of Garcia's car, at the scene of the traffic stop. He found a second purse on the passenger side floorboard where Plaintiff had been sitting. Garcia claimed ownership of that purse. Hall searched the purse and found two bags of alleged marijuana, one bag of crushed diet pills, and one bag of tobacco. All four bags were wrapped in tape and latex, in a manner used by those who conceal drugs in their body cavities. At the scene, Plaintiff repeatedly denied knowing anything about the contents of the purse or about drugs. Hall also had dispatch run a background check on Plaintiff, and quickly learned that she was 17 years old and that she had no outstanding warrants or prior drug convictions. Hall announced that he intended to arrest both Garcia and Plaintiff for possession of drugs with intent to distribute. Mowery had some reservation about whether Plaintiff should be charged, but Hall's view prevailed. Hall called dispatch to "start juvenile intake," and Hall told Mowery to get "strip searches on both" women to check their "intimate hiding places."

    At the Harvey County Detention Center, Mowery and Janell Buford, a female jailer, had Plaintiff remove her clothing and they visually inspected her naked body and body cavities. They found no contraband. Mowery and Buford knew that Plaintiff was 17 years old. Plaintiff was released after approximately three days of detention and no formal charges were ever filed against her. The original Complaint alleges that Plaintiff was in "three days of juvenile

detention."[10]

**IV. Discussion**

**A. Counts I and IV - Fourth and Fourteenth Amendments**

In Count I, the Complaint states individual and official capacity claims against defendants Hall and Mowery for unreasonably seizing Plaintiff without probable cause. In Counts I and IV, the Complaint further states that the seizure violated Plaintiff's rights under the Fourteenth Amendment. Plaintiff offers no argument or justification for analyzing her claim under the Fourteenth Amendment. Moreover, as this Court ruled in its prior order, because the Fourth Amendment explicitly addresses the claims regarding Plaintiff's arrest and strip search, the Fourth Amendment is the proper basis under which to consider her claims, not the more general due process claim under the Fourteenth Amendment.[11] Thus, the Court proceeds to analyze Defendants' motion for judgment on the pleadings with respect to the individual and official capacity claims against Hall and Mowery for violation of the Fourth Amendment in unreasonably seizing Plaintiff.

**1. Qualified Immunity**

Section 1983 provides a cause of action for the deprivation of rights by any person acting under the color of a "statute, ordinance, regulation, custom, or usage, of any State or Territory."[12] Allowing a person to seek damages in an individual capacity suit against the offending parties is

---

[10] The Amended Complaint dropped the word "juvenile" and stated she was in three days of detention.

[11] *Albright v. Oliver*, 510 U.S. 266, 271-273 (1994) (where a particular Amendment provides an explicit textual source of constitutional protection, that Amendment rather than the more generalized notion of substantive due process must be the guide for analyzing the claim.).

[12] 42 U.S.C. § 1983.

a vital component for vindicating cherished constitutional rights.[13]

In certain circumstances, however, the individual offending party is entitled to qualified immunity from damages liability under § 1983.[14] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."[15] To this end, qualified immunity shields government officials from liability for money damages unless the plaintiff shows (1) that the official violated a statutory or constitutional law, and (2) that the right the official violated was "clearly established" at the time of the challenged conduct.[16] Qualified immunity is a defense that must be pleaded by the defendant, but once the defendant raises it, the burden of proof is on the plaintiff.[17] Unless the plaintiff proves both prongs, the official is entitled to qualified immunity.[18] Courts have discretion to decide which of the two prongs of the analysis to address first.[19] For the purposes of this analysis, the Court will assume that Mowery and Hall executed an unreasonable seizure of Plaintiff without probable cause. Nevertheless, because the Court finds that the right Mowery and Hall violated was not clearly established at the time of the challenged conduct, the Court grants them qualified immunity.

The analysis of what is the clearly established right at issue, hangs not on the broad,

---

[13] *Gomez v. Toledo*, 446 U.S. 635, 639 (1980).

[14] *Id.*

[15] *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011).

[16] *Id.* at 2080.

[17] *Gomez*, 446 U.S. at 640.

[18] *See al-Kidd*, 131 S.Ct. at 2080.

[19] *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

general right to not be subjected to an unreasonable seizure; rather, the right must be "particularized," or defined by specific facts, in order to define the contours of the right.[20] Although Plaintiff is not required to find a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate."[21] Plaintiff simply does not point to any existing precedent that would place beyond debate that these facts did not establish probable cause to arrest Plaintiff.

An arrest is a seizure under the Fourth Amendment and must be reasonable under the circumstances.[22] A warrantless arrest is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been committed or is being committed.[23] Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.[24] In evaluating the existence of probable cause, the court considers whether the facts and circumstances within the officer's knowledge and of which they have reasonably trustworthy information are sufficient to warrant a reasonable man of caution to believe that an offense has been or is being committed.[25]

At the time Plaintiff was arrested, Hall and Mowery knew that Plaintiff had been seated in the passenger seat, and on the floorboard below her was a purse, within her ready reach, that

---

[20]*Reichle v. Howards*, 132 S.Ct. 2088, 2094 (2012).

[21]*al-Kidd*, 131 S.Ct. at 2083.

[22]*al-Kidd*, 131 S.Ct. at 2080.

[23]*Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

[24]*Id.* (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

[25]*Fogarty v. Gallegos*, 525 F.3d 1147, 1156 (10th Cir. 2008) (citing *United States v. Edwards*, 242 F.3d 928, 934 (10th Cir. 2001)).

contained what the officers suspected was marijuana, crushed diet pills and tobacco. Garcia claimed ownership of this purse and, drawing all reasonable inferences in Plaintiff's favor, also claimed ownership of the drugs. The purse contained identification documents belonging to Garcia. Plaintiff claimed ownership of the other purse that contained Plaintiff's cell phone and no contraband. In the officers' experience, the marijuana and contraband was packaged for distribution. It was marijuana, crushed diet pills and tobacco, in four separate packages, and packaged in cellophane, tape and latex, a manner used when the packages are going to be secreted or concealed in a body cavity. The officers also suspected that Garcia and Plaintiff were en route to Hutchinson, the situs of a correctional facility. Plaintiff denied knowledge of drugs or the content of the purse that contained the drugs. Plaintiff told Hall that she was catching a ride with Garcia to Hutchinson to visit a friend named Rosie Gomez. Garcia separately told Hall that she was going to visit "Rosie" whose last name she did not know.

Under the totality of circumstances, Hall decided that there was probable cause to arrest both Garcia and Plaintiff for possession with intent to distribute marijuana. Mowery had some reservation about arresting Plaintiff because, although the purse with the contraband was at Plaintiff's feet, Plaintiff had her own purse. The question is whether it is clearly established that a reasonable officer could not have believed that probable cause existed to arrest Plaintiff, given these facts and circumstances. The parties cite to a number of cases analyzing probable cause and qualified immunity in the context of a warrantless arrest. Defendants focus on cases where the arrestee's access to the contraband was evident, and/or where the drugs, drug paraphernalia or drug proceeds were in plain view, such that the arrestee had reason to know

8

about the presence of drugs or drug dealing. For example, in *Maryland v. Pringle*,[26] officers found baggies of suspected cocaine in the car, giving them probable cause to believe that a felony had been committed. But the question was whether it was reasonable to believe that there was probable cause to believe that Pringle, the front seat passenger, possessed the cocaine. There were three occupants in the car; the cocaine was in a back-seat armrest accessible to all three occupants. Rolled up cash was found in the glove compartment directly in front of Pringle. None of the three occupants offered any information with respect to the ownership of the cocaine or the money. The Supreme Court held that it was an "entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine."[27]

In *Pringle*, the Supreme Court further distinguished a case that Plaintiff now unavailingly relies upon, *Ybarra v. Illinois*.[28] In *Ybarra*, the Court held that where police had a warrant to search a tavern and its bartender for possession of drugs, they lacked probable cause to search the patrons of that tavern, because they lacked "probable cause particularized" to the patrons.[29] In *Pringle*, the Court distinguished the officers' search of a public tavern in *Ybarra*, from the search in *Pringle* of "a relatively small automobile." The Court noted, as it had in an earlier decision, *Wyoming v. Houghton*,[30] that "a car passenger-unlike the unwitting tavern patron...will often be engaged in a common enterprise with the driver, and have the same interest in

---

[26] 540 U.S. 366, 370-372 (2003).

[27] *Id.* at 372.

[28] 444 U.S. 85, 91 (1979).

[29] *Id.*

[30] 526 U.S. 295, 304-305 (1999).

9

concealing the fruits or the evidence of their wrongdoing.[31]

Plaintiff focuses on the fact that the drugs were found in a closed purse that Garcia claimed ownership of, not a common or shared compartment in the car, and that there was neither drugs, drug paraphernalia, or drug proceeds in plain view of Plaintiff (or the officers) in the car. Plaintiff also focuses on the fact that, unlike cases where the arrestees all disclaim ownership of the property at issue, in this case Garcia claimed the purse that contained the contraband and denied that it was Plaintiff's purse; while Plaintiff claimed the other purse, and denied any knowledge of drugs. Plaintiff analogizes this case to *United States v. DiRe*,[32] where the Court held there was no probable cause to arrest all the occupants of a car for possession of property when the informer had singled out only one occupant as the possessor. But in *DiRe*, the question was whether the wrongfully arrested individual's presence in a car with a person who sold counterfeit gas coupons allowed an inference that the individual was involved in a conspiracy to sell the gas coupons. Further, before the arrest, the officers only knew that one individual, an informer, had the coupons; there was no indication that the contraband was ever stored in a way that it would be accessible to other occupants in the vehicle. These facts serve to distinguish *DiRe*, such that it does not clearly establish the law as Plaintiff argues in this case.

This case is similar to *United States v. Patrick*,[33] cited to by Defendants. There, the Second Circuit found probable cause to arrest Patrick, because he was accompanying Taylor as they crossed the Canadian border on foot into the United States. Taylor had drugs in her

---

[31] *Maryland v. Pringle*, 540 U.S. at 373.

[32] 332 U.S. 581, 592-594 (1948).

[33] 899 F.2d 169, 170-171 (2nd Cir.1990).

10

knapsack; Patrick did not. But officers relied upon the fact that they were traveling together and separately told officers an unusual story about how they had accidentally crossed the border into Canada on a bus and walked back across a bridge to the United States. In this case, the officers also considered, among other factors, that Plaintiff and Garcia were traveling together to the same location, and were not merely in each other's presence through happenstance.

In the present case, the facts and background information reasonably believed to be true by arresting officers in this case were: (1) that the purse containing the contraband was claimed by Garcia; (2) Plaintiff claimed another purse that contained Plaintiff's phone; (3) the purse containing the contraband lay at Plaintiff's feet, on the passenger side floorboard, such that Plaintiff had ready access; (4) Plaintiff and Garcia were traveling together to see "Rosie;" (5) Plaintiff and Garcia were traveling towards a correctional facility; (6) the contraband was packaged in four packages, each in a manner that would allow it to be secreted in a body orifice; (7) Garcia could not have secreted all four packages in her body orifices;[34] and (8) Garcia and Plaintiff together could have secreted all four packages in their body cavities. On these facts, it was not clearly established that a reasonable officer could not have believed that probable cause existed to arrest Plaintiff.

In other words, the law did not clearly forbid the officers from making the reasonable inference that Plaintiff and Garcia were traveling together, for a common purpose that involved secretion of contraband in their body orifices for distribution to another or others, based in

---

[34]Doc. 33 at 11.

particular on the holdings by the Supreme Court in *Pringle* and in *Houghton*.[35] Thus, there was no constitutional violation in arresting Plaintiff.

Thus, defendants Hall and Mowery are entitled to qualified immunity on the individual capacity claims related to Plaintiff's arrest and seizure, to wit: Plaintiff's Fourth and Fourteenth Amendment claims in Count I, as well as Plaintiff's Fourteenth Amendment claim in Count IV. Furthermore, because Plaintiff has not shown a constitutional deprivation, the official capacity claims against Hall and Mowery fail as well.[36]

**B. Counts II, III and IV - Fourth, Fourteenth, Fifth, Ninth Amendments**, **Privacy**

In Counts II, III and IV of the original Complaint, Plaintiff brings official and individual capacity claims against defendant Mowery under the Fourth, Fourteenth, Fifth and Ninth Amendments, as well as for gross invasion of her right to privacy, all based on Defendant Mowery's participation in the strip search of Plaintiff at the detention facility. As this Court previously ruled in its Memorandum Orders, because the proper basis to challenge a strip search is under the Fourth Amendment, Plaintiff has failed to state a claim under the more general due process provisions of the Fifth and Fourteenth Amendments. Furthermore, the Ninth Amendment is a rule of construction, not an independent source of constitutional rights, such that it cannot form the basis of a civil rights claim under § 1983.[37] Thus, the Court proceeds to analyze Plaintiff's individual and official capacity claims against defendant Mowery regarding

---

[35]Plaintiff also argues that Hall's search of Garcia's car was not consensual and was not a true inventory search, as it took place at the scene of the traffic stop, rather than at the police station. The Court need not decide this issue, for Plaintiff has no standing to object to the search of Garcia's car. *Rakas v. Illinois*, 439 U.S. 128, 148-49 (1978)

[36]*Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782-83 (10th Cir.1993).

[37]*See Griswold v. Connecticut*, 381 U.S. 479, 492 (1965); *Onyiuke v. N.J. State Sup.Ct.*, 242 F. App'x 794, 794 (3d Cir. 2007).

the strip search, under the Fourth Amendment.

As discussed in the prior section of this opinion, Defendant Mowery is entitled to qualified immunity if she did not violate a constitutional right that was clearly established at the time in question. The Court has already analyzed the contours of Plaintiff's claimed right, and concluded in its prior Memorandum Orders that defendant Buford did not violate the Fourth Amendment in conducting the strip search of Plaintiff, and thus was entitled to qualified immunity. For the same reasons, the Court concludes that Plaintiff has also failed to show that defendant Mowery conducted an unreasonable strip search.

In *Archuleta v. Wagner*,[38] the Tenth Circuit set forth the principles by which a strip search will be reasonable for purposes of the Fourth Amendment. There are two primary concerns involved in this inquiry: "whether a detainee is to be placed in the general prison population and whether there is reasonable suspicion that the detainee has concealed weapons, drugs, or contraband."[39] Reasonable suspicion to search Plaintiff's body must have a "minimum level of objective justification."[40]

Plaintiff again argues, as she argued in her motion to reconsider the Court's prior order dismissing Plaintiff's claims against Defendants Buford, Walton and Board of Commissioners of Harvey County, that the arrest and strip search of Plaintiff was illegal because she was never charged with a crime. But, as this Court explained in its prior orders, the proper inquiry is as articulated in *Archuleta*, whether the detainee was to be placed in the general prison population

---

[38] 523 F.3d 1278, 1284 (10th Cir. 2008).

[39] *Id.*

[40] *Id.*

13

and whether there was reasonable suspicion that the detainee has concealed contraband. It does not matter whether Plaintiff was ever formally charged; she was arrested for possession of controlled substances. Indeed, in *Archuleta*, the Tenth Circuit was evaluating reasonable suspicion underlying the charge in an arrest warrant, not the warrant itself, even though the "charges" were eventually dismissed.[41] It simply is irrelevant whether the person arrested was later charged with a crime.[42]

Plaintiff next argues that Mowery, like Buford, did not have reasonable suspicion to strip search Plaintiff because she had no reasonable suspicion that Plaintiff was concealing drugs, weapons or contraband. While the Tenth Circuit has rejected the contention that it is reasonable to strip search every arrestee "booked on a drug related charge,"[43] it found a strip search reasonable when the person is arrested for drug possession and there is reasonable suspicion they have additional drugs or weapons on their person, even if they were not going to be placed in the general prison population.[44] Mowery, as an arresting officer could not rely on the charge itself, but had to evaluate whether the search ws reasonable based on her awareness of other facts and circumstances surrounding the arrest of Plaintiff and Garcia. The facts suggested that Garcia and Plaintiff were traveling together towards a correctional facility with contraband packaged in a manner that would allow it to be secreted in a body orifice. This provided Mowery with the

---

[41]*See Archuleta v. Wagner*, 523 F.3d 1278, 1285 (10th Cir. 2007) (evaluating reasonable suspicion on charge in arrest warrant even though the "charges" against her were eventually dismissed); *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000) (explaining that an officer can make a warrantless arrest on the basis of probable cause that a crime has been committed).

[42]*Fogarty v. Gallegos*, 523 F.3d 1147, 1156.

[43]*See Foote v. Spiegel*, 118 F.3d 1416, 1425 (10th Cir. 1997) (citing *Cottrell v. Kaysville City, Utah*, 944 F.2d 730, 734 (10th Cir. 1993)).

[44]*Id.* (citations omitted).

reasonable suspicion necessary to justify the strip search of Plaintiff upon her arrest and detention, however temporary, at the Harvey County Detention Center.

Plaintiff also argues that a strip search was unwarranted because she was a juvenile and in accordance with the Harvey County Detention Center's policies, she would not have been placed in the general population at that detention facility. But, as the Court explained above, the strip search was sufficiently based upon the reasonable suspicion that Plaintiff had concealed drugs on her person. Moreover, it is not clear from the Complaint whether Plaintiff was placed in the general population at the Harvey County Detention Center, or at a separate juvenile detention facility, for the Complaint merely states that Plaintiff was placed in a detention facility, without specifying which one. Nor does the Complaint specify whether Plaintiff was strip searched at the Harvey County Detention Facility as part of the booking process into the juvenile facility.[45] Given the paucity of facts alleged in the Complaint, Plaintiff has no basis to argue that there was a constitutional deprivation emanating from her being strip searched despite not being introduced into the general population. In any event, the facts alleged in the Complaint and reasonable inferences, viewed in the light most favorable to Plaintiff, show that Mowery had reasonable suspicion that Plaintiff was concealing drugs or contraband on her person, which justified the strip search.

Plaintiff also argues that because the marijuana and contraband seized from Garcia's purse was packaged consistent with an intention to conceal them in body cavities, there could be

---

[45]Although the Court has denied leave to file the Amended Complaint, notably, attachments to the Amended Complaint show that Harvey County's policy with respect to juvenile offenders, was that they were booked in the Harvey County Detention Center (Exhibit 2), but later held at the juvenile facility (Exhibit 3). Further, if strip searches were deemed necessary, the searches were performed at the Harvey County Detention Center.

no reasonable suspicion that Plaintiff had already secreted drugs on her person.  That argument is unavailing, however, because having found drugs packaged for concealment and distribution, and having arrested Plaintiff for possession of drugs with intent to distribute, there was reasonable suspicion that there were more drugs than those found in Garcia's purse.

Not only has Plaintiff failed to show that the strip search violated the Fourth Amendment, she has failed to show that it violated clearly established law at the time of the strip search.  To demonstrate that a right is clearly established, Plaintiff can rely on "cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits."[46]  But the Court is cognizant that it "cannot find qualified immunity wherever we have a new fact pattern."[47]  The Tenth Circuit has "'shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional.'"[48]  In sum, the qualified immunity analysis requires that the Court determine whether a reasonable officer would have known that the conduct at issue was unconstitutional.

Plaintiff points to no Supreme Court or Tenth Circuit precedent clearly establishing a right to be free from a strip search, when a juvenile is arrested on drug charges and where the drugs were packaged for insertion into a body orifice.  On the contrary, a number of Tenth Circuit cases found reasonable suspicion justifying a strip search of arrestees found in possession

---

[46] *Archuleta v. Wagner*, 523 F.3d at 1283.

[47] *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).

[48] *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)).

of drugs and drug paraphernalia.[49]  And although the Tenth Circuit had not ruled squarely on the issue, a number of circuit courts had found that strip searches of juveniles suspected of drug use did not violate the Fourth Amendment.[50]  Thus the law did not put officers on fair notice that a strip search of a juvenile arrested for drug possession with intent to distribute would not be reasonable.  For the law at the time of Plaintiff's arrest and strip search was that an officer was justified in strip searching an arrestee if there was reasonable suspicion that the arrestee possessed drugs.  Moreover, Plaintiff can point to no controlling decision that a strip search of a juvenile upon booking at an adult jail, that is based on reasonable suspicion of drug possession, is unlawful.[51]  For all of these reasons, Mowery has qualified immunity on the individual capacity claim alleged against her in Count II.  Furthermore, because there was no constitutional deprivation, the official capacity claim against Mowery fails as well.

### C. Count V - City of Newton failure to train

Count V of the Complaint states that Defendant City of Newton failed to properly and

---

[49]*See, e.g.*, *Warner v. Grand County*, 57 F.3d 962, 964 (10th Cir. 1995) (possession of marijuana and marijuana pipe established reasonable suspicion justifying strip search for additional drugs, even if arrestee not going to be placed in general population).

[50]*See, e.g.*, *N.G. v. Connecticutt*, 382 F.3d 225, 234-35 (2nd Cir. 2004) (strip search upon juvenile's initial admission into detention center was reasonable under the Fourth Amendment); *Reynolds v. City of Anchorage*, 379 F.3d 358, 362-364 (6th Cir. 2004) (strip search of juvenile in group home who was suspected of consuming drugs did not violate the Fourth Amendment); *Justice v. City of Peachtree City*, 961 F.2d 188, 193-94 (11th Cir. 1992) (holding that officers may strip search a juvenile in custody, even for minor offense, based on reasonable suspicion that juvenile possessed weapons or contraband.).

[51]*Cf. Smook v. Minnehahah Cnty.*, 457 F.3d 806, 813-14 (8th Cir. 2006) ("no governing appellate decision had decided how to strike the "reasonableness" balance in the situation of juvenile detainees, and as late as 2004, the Second Circuit concluded not only that the asserted right of juvenile detainees to be free from strip searches was not clearly established, but that the right did not even exist."); *N.G. v. Connecticut*, 382 F.3d 225, 233 (2d Cir. 2004) (discussing the lack of appellate authority on the reasonableness of strip searches of juveniles in state custody, absent individualized suspicion of possession of drugs or contraband); *Reynolds v. City of Anchorage*, 379 F.3d 358, 367 (6th Cir. 2004) (finding officer had qualified immunity for visual strip search of juvenile where officer had reasonable suspicion that the plaintiff possessed narcotics).

adequately train and supervise Mowery, Hall, and Buford in the requirements for an arrest, strip search and juvenile intake. In its prior Memorandum Opinion and Order, the Court dismissed this same claim against defendant Board of Harvey County Commissioners, on the basis that there was no underlying constitutional violation upon which to premise municipal liability against the County. For the same reason, the Court dismisses this claim against defendant City of Newton.

> The Supreme Court has explained:
>
>> [I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under
>> § 1983.[52]

But the Complaint does not contain sufficient allegations of a jail policy of inadequate training on strip searches that amounts to a deliberate indifference to detainees' Fourth Amendment rights. Nor does Plaintiff identify a deficiency in the training program. Instead, she posits that the alleged constitutional violation is indicative of a failure to train according to the excerpted policies attached to the now stricken Amended Complaint. Although the Amended Complaint is not the operative pleading, the Court notes that upon review of the Amended Complaint, it does not set forth additional facts that are material to Count V.[53]

---

[52]*City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

[53]The Amended Complaint has four attachments that were not attached to the original Complaint. Exhibit 1 is a Harvey County Detention Center "Probable Cause/Reasonable Suspicion Assessment Form," which indicates that Plaintiff was strip searched because of the "nature of the criminal charges pending against the arrestee." Exhibit 2 is an April 7, 2010 memo from Harvey County Sheriff T. Walton, cautioning that officers need to better follow booking procedures, including completing the Inmate Property Sheet, being more thorough in pat down searches so that contraband is discovered, and providing the Detention Center with a complete list of charges at the time the

A local government cannot be held liable under § 1983 for acts of its employees; a plaintiff must establish that the municipality has a policy or custom that directly caused the constitutional deprivation of rights.[54] In short, Plaintiff bases this claim against the City of Newton on an alleged constitutional deprivation that did not occur. Thus this claim fails.

**IT IS THEREFORE ORDERED that Defendants' Motion for Judgment on the Pleadings is GRANTED.**

**IT IS SO ORDERED.**

Dated: July 2, 2013

                                          S/ Julie A. Robinson

                                          JULIE A. ROBINSON

                                          UNITED STATES DISTRICT JUDGE

---

inmate is brought in to the Detention Center. The memo also states that "[a]ny juveniles brought into the Detention Center for booking purposes must be accompanied by the arresting officer throughout the length of time the juvenile is at the Detention Center." The memo further states that "[i]f strip searches are needed, the Detention Center Deputies will complete those tasks." Exhibit 3 is page 7 of the Harvey County Sheriff's Office Correctional Directive dated August 21, 2001, which states, "H. Juveniles 1. Juvenile offenders WILL NOT be held in the Harvey County Jail; and 2. Inmates who are under 18 years old, but are charged as adults, are..." It is unclear whether this is a complete sentence or whether the directive goes on to another, unsubmitted, page. Finally, Exhibit 4 is page 4 of the Harvey County Sheriff's Office Correctional Directive dated August 21, 2001, detailing the policy for pat searches.

[54]*Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (10th Cir.1978).